Watkins vs. Turner et al.

---

## WATKINS vs. TURNER et al.

1. WITNESSES: *Husband and wife. Magness v. Walker, 26 Ark., overruled.* Husband and wife can not testify for or against each other in civil cases. And the incidental benefit which the husband, though a formal party, may derive from the wife's success in a suit for property, can not be noticed as a legal or equitable interest to authorize his admission as a witness.

The decision in *Magness v. Walker, 26 Ark.,* 470, that a husband or wife acting as agent for the other, may testify as to the matters of the agency, overruled.

2. SPECIFIC PERFORMANCE: *Discretion of chancellor.* Courts of equity have always reserved the right of exercising a sound discretion in suits for specific performance, and generally refuse relief where the case is not clear, or where the complainant is in the wrong, or there are considerable countervailing equities. In such cases equity refuses to interfere, and leaves the parties to their rights and remedies at law.

3. CONTRACT:   *Consideration.*

If the purchaser of land at execution sale agree with the owner, to convey the land to his wife and children, upon certain conditions to be performed by the wife, and he thereupon refrain from redeeming the land from the execution sale, this is sufficient consideration to support the contract.

4. PARTIES:   *Trustees.   Powers, etc.*

A contract to convey land to a wife and such of her and her husband's children as she and he shall designate, constitutes them trustees of a power to designate the children to receive, with the wife, the conveyance; and a suit for the conveyance can not be maintained until the designation is made.   If either parent die before it is made, all the children will take equally with the mother.   Chancery will exercise the power on the principle of equality.

APPEAL from *White* Circuit Court in Chancery.
Hon. SIDNEY M. BARNES, Special Judge.
*Coody,* for appellant.
*Turner, pro se.*

EAKIN, J.   This is a bill for specific performance, growing out of the matters involved in the case of *Turner v. Watkins et al., 31 Ark., 429.*   The transcript of that case, already on file here, is, by agreement of counsel and leave of the court, brought to our notice in this case, together, and in connection, with the transcript of the case appealed.

After the decision in that case, the wife of Thomas Watkins, Mrs. M. E. Watkins, who was not a party thereto, filed this original bill in the White county circuit court in chancery, on the fifteenth of December, 1877, against B. D. Turner, as principal defendant, together with. J. N. Cypert, trustee, and John G. Holland, a receiver of the court. In the bill and amendments thereto, she sets forth the deed of trust executed by herself and her husband to Cypert, on the ninth of June, 1869, to secure the notes to Sallie F.

Dougan for about $3,500; the judgment of Moses Green-wood & Son against her husband for about $1,930; on the fourth of November, 1869; the levy, *ven. ex.*, and sale of the lands in controversy under said judgment for a balance of $916.43 then due thereon; the purchase of all of said lands by plaintiffs in execution, at said sale, on the fifth day of August, 1871; the redemption of the same by defendant, Turner, as a judgment creditor, on the first day of August, 1872, by paying off the bid and crediting his execution with the whole amount of his judgment, and his receipt of the sheriff's deed, on the eighth of the same month—all substantially as set forth in the former opinion.

She says, further, that she and her husband had great confidence in, and reliance upon, the friendship of Turner, who had been, and was then, their attorney and confidential adviser, and whose advice they followed without question. They relied upon him to advise and assist them in taking some steps to prevent the land from passing beyond their control, and expected his advice in redeeming the lands from the Greenwoods, which they had intended to do. When he redeemed, on the first of August, 1872, they felt confident, she says, that the redemption was made for their benefit, except in so far as it might be necessary for Turner's own security. Her husband and Cypert went to Turner, however, before the time of redemption expired, to ascertain more definitely his intentions, when he assured them, verbally, that he did not wish to deprive her and her husband of the property; that he desired only security for what her husband owed him, and certain other specified claims which he held for collection; and that if complainant, through herself or her friends, would pay these off in a reasonable time, he would convey the property to her and her children. This he agreed, at a future time, to reduce

to writing; and she charges that, relying upon this, neither she nor her husband made any further effort to redeem the lands from him, but allowed the sheriff's deed to be executed. But for this she would have caused the land to be redeemed.

She charges that the contract for renting the lands to her husband, made by Turner on the fourteenth of January, 1873, and which is partly set forth in the opinion in the former case, was executed in pursuance of the previous verbal agreement—except that the terms concerning the renting were superadded. She says Turner did that to estop Watkins from denying his title as landlord, in case he should attempt to question the regularity of the sale under the Greenwood execution. For the rest, she says that it was *her* part, and sets it forth, and exhibits it, with the bill.

This contract is signed by Watkins and Turner, and is the instrument upon which she relies for specific performance.

By it, Watkins agrees to rent the lands from Turner for the year 1873, and to pay therefor the sum of $1,650 by the twenty-fifth day of December next following, and to return the premises in good order on the first day of January, 1874. Turner, on his part, agreed thereby, upon the payment of said rent, and also upon the payment to him, "by Mrs. Margaret E. Watkins, or any friend for her," of the sum of $4,635.67-100, being the amount of Watkins' indebtedness to Turner, at that date, exclusive of legal services in a case pending in Jefferson county, between Watkins and Brodie and King; and a sum of $285, and interest, due Turner & Moore (late law partners), "and whatsoever sum may, by agreement, arbitration, judgment, or otherwise, be ascertained to be justly due from said Thomas Watkins to Emily S. Quarles, or to Quarles and

wife, for balance of purchase money for part of said lands, unless the same shall be sooner paid, in which event, it shall be the same as if paid by her ;" and, also, all taxes accrued on said land for the year 1872, or any previous year ; and, " shall also save me from the payment of any mortgage or other incumbrance on said lands, existing before the judgment lien, under which I obtained title; and shall also pay me any other sum that said Watkins may then owe me ;" then, on the first day of January, 1874, to convey said lands, by special warranty deed, " to her, and such of the children of her and said Thomas Watkins, or of either of them, or to a trustee for them, as he and she, by writing, may designate, to their separate and exclusive use and benefit, free from all rights and liabilities of said Thomas Watkins." But, it was provided, " if any of the above-mentioned items, or debts, shall not be paid, or if I shall have to pay, or discharge in any way, any mortgage or other incumbrance, or any part of such mortgage or other incumbrance on said lands, or any part of them, in order to protect my title to them, this obligation on my (the said B. D. Turner's) part, to convey said lands, shall be absolutely void."

In another clause it was stipulated, on the part of Turner, that if any part of his debt of $4,635.67-100 should be paid before the twenty-fifth of December, it should be credited upon the rent, with interest on the said payment at the rate of $3\frac{1}{2}$ per cent. per month until said twenty-fifth of December.

This instrument is set up as a declaration of trust, on the part of Turner, based upon the parol agreement made with Watkins in the preceding month of August, in which, time for the performance of the conditions was not of the essence of the contract; at least, it is contended, that none of

them needed to be performed before the first of January, 1874.

She says that, in compliance with said agreement, she has paid all taxes due upon the lands at the date of the contract, as well as those that have since accrued.

By way of further performance, and excuse for non-performance, of conditions on her part, she says: That she and her husband *allowed* the trustee, Cypert, to take control of the lands, and rent them out to Greer & Baucum, and G. B. Greer, for the years 1874, 1875 and 1876, for the aggregate amount of $4,800, which, after deducting substantial improvements and repairs, was to be paid on the trust-debt, then held by Greer & Baucum, which, together with the rents for 1877, now in the hands of the receiver, Holland, will be sufficient to remove the incumbrance of the trust-debt. Moreover, the receiver had again, at the time of the filing of the bill, rented the lands for the year 1878, the proceeds of which she was anxious should go to defendant as a credit upon the indebtedness of plaintiff to Turner; and she further desired, if needed, to leave the lands in the hands of the receiver until the rents should discharge all she owed him.

As to the claim of Quarles and wife, alleged to be a lien upon the land, being for the purchase-money of a portion, she says it was afterwards sued upon, and a judgment recovered against Watkins for $2,523; which judgment she bought for a valuable consideration on the fifteenth day of December, 1877, and took an assignment, and so settled it. The assignment is to her individually, together with all liens, and rights to enforce them.

Amongst the debts estimated to make up the amount to be paid Turner, was one secured by a deed of trust, with power of sale, upon a house and lot in Searcy, which was

the homestead of Watkins and his wife. This debt was for $800, with 10 per cent. interest from the thirtieth of August, 1867, due October 1, 1868. Complainant did not join in the deed of trust. Turner caused this property to be sold by the trustee, on the twenty-first day of April, 1873, and purchased the same for $1,610, which, she alleges, was less than one-third of its value. They had rented out the dwelling that year for $400, expecting to use it as a part of the money to be paid Turner. This rent they failed to collect, on account of the sale, and she was thereby, to that extent, deprived, by the wrongful act of defendant in selling before the time he had given, of the means of fulfilling the conditions of the agreement. She submits that he should be held chargeable with all the rents of the homestead since that time, which would be sufficient to discharge his lien upon it. She says that she and her husband tendered Turner the full amount of the debt due on the house, on the thirty-first of December, 1873, which he refused.

Further, she says that, in 1873, Turner instituted suit against Watkins, in the circuit court, upon divers other debts included in said estimate, for $700 or $800; and that, in the fall of 1873, he attached the crop grown on the place, for the rent reserved against Watkins, whereby it became tied up in litigation, and, until recently, could not be used, and was, of necessity, otherwise applied.

In further explanation, she says that, by litigation with other parties, Turner's title became very doubtful, and she was uncertain of obtaining title under the declaration of trust, if she carried it out. Now that the title has been declared good, she desires to pay the balance of the debts specified in the trust, and offers to pay into court, under its orders, whatever may be found due. She has applied to

Turner to receive the consideration and execute a deed to herself and children, and he has refused, claiming the land as his own property.

She, therefore, insists upon the execution of the declaration of trust, which, she claims, gives her an equity which lasts until properly foreclosed. She prays relief, accordingly, with appropriate accounts to be taken of rents; that the sale of the homestead be set aside, and an account of the rents for that be taken also, and charged against Turner; or, if the sale stands, that the value of the property be credited; and for general relief.

Defendant, Turner, denies all confidential relations between himself and Watkins and wife regarding this subject-matter; or that either of them sought, or intended to act upon, his advice, or had any reliance or confidence that his redemption of the land was for her benefit. He denies that her husband and Cypert sought an interview with him regarding his purpose in redeeming. He says the only purpose they disclosed to him was to induce him to take back his bid, and to let Watkins redeem in his place, which he refused. Mrs. Watkins had no interest whatever in the land save prospective dower. He denies, also, that he, by any means, directly or indirectly, prevented them from redeeming; or that she had the ability, or right to do so had she been able.

He denies that she or her husband ever occupied said lands as their own under any claim of a trust for her use, or made improvements under the supposition that the lands were hers, subject only to his claim for debts. She never claimed under defendant until after the decision of the supreme court in the other case.

Within less than two months after the renting, on the fourteenth of January, 1873, complainant's husband denied

his title, and conspired with others to defeat it and avoid the sale made under Greenwood's execution.

This produced the former suit. In these efforts Watkins had the sympathy and co-operation of his wife. He says the necessary legal services of himself and others on his behalf in that litigation, were worth about $2,000, besides considerable expenditure made by him in cash. He says that of the $4,635.67, set forth in the instrument, only about $1,550 has ever been paid, and no part of that by the plaintiff, but was made by forced collections against Thomas Watkins. He says that the whole of the matters and issues made in the complaint are mere after-thoughts arising after the decision of the title adversely to Watkins in the former case, and directed to retrieving in the wife's name what was there lost to the husband. He relies upon the former case as *res judicata*, and also upon the statute of frauds. The purport of his answer is to deny all the circumstances alleged to raise a trust or confidence regarding the land, although he admits that he had no disposition to deprive Watkins and his family of the property, and promised to convey to her the lands on the terms alleged, which he would have performed without the profit of a dollar. But he says no time was given beyond the first of the succeeding January, and Mrs. Watkins herself, never acceded to the proposition. She was not present; neither Cypert nor her husband pretended to represent her, and never claimed for her any rights under the supposed trust until the filing of the bill; nor did she ever promise or undertake to perform the conditions on which he proffered to convey. He denies that he received the sheriff's deed by permission of complainant, but says she was not able to prevent it.

He denies that the contract of renting made with Wat-

kins in 1873 was in execution of the previous promise. The conditions of that promise had not been complied with, and it was on both sides considered as abandoned. Upon that occasion, Watkins requested defendant to renew his offer to allow him to reclaim the lands, which defendant did, giving him twelve months more to do so. He says that this promise was independent of the contract for renting, and there was no consideration for it whatever, but that it was on his part a gratuitous act of kindness. He denies that he attached any property of complainant or drove her from her homestead; she had no separate property, nor any interest in the land claimed as a homestead; she and her husband had moved from the same and were living on the lands in the country.

He denies that the Quarles debt was a lien upon the land; also that complainant-paid any taxes upon the land, as alleged, but says the same were paid by G. B. Greer, who is now seeking to recover them of defendant. He says that in place of endeavoring to comply with the conditions of his offer in the contract for renting, the said Watkins, by consent and encouragement of complainant, within less than three months after its execution, repudiated it and set to work to prevent its performance, by acts and conduct set forth and explained in the pleadings and record of the former suit, by which they hoped and expected to recover the lands without the payment of a dollar.

He says that in place of paying the Quarles debt of about $2,000, her husband repudiated it, and he was compelled to bring suit and recover the judgment after long litigation. At the time of complainant's pretended purchase of the same, defendant was entitled to a fee of about

$300, of which he notified her attorney, and of which he has only received $80.

He denies that complainant, or her friends for her, ever paid any of the debts specified in said promise, or that Watkins himself has ever done so, except under legal compulsion, and under that, only a part.

He insists that his promise was made for the benefit of complainant and her children, and in contemplation of payments to be made by herself or her friends for her, in such a way that the lands would not be fairly subject to her husband's debts, as would be the case if the money should be furnished out of his means.

There were other denials of matters of less significance, and a demurrer to the bill for want of equity, which was overruled.

The cause was heard upon the pleadings and evidence, from which the deposition of Watkins was excluded on motion of defendant, Turner, upon the ground that he was the husband of the complainant. To this appellant excepted.

The court, upon the whole case, denied relief, and dismissed the bill at the cost of complainant. She appealed.

The first point to be noticed is the exclusion of the deposition of Thomas Watkins, the husband of complainant. He was not a party to the suit, or only *pro forma*, nor, technically, did he have any interest in the result. The incidental benefit which he might derive from his wife's success can not be noticed as a legal or equitable interest. The deposition was not offered as that of one testifying in his own behalf, but as that of the husband in behalf of the wife.

This testimony of husband or wife for or against each other, at common law was not admissible; whether on

43

grounds of *interest*, or those of *public policy*, has been a matter of much discussion. Lord Coke said (*Co. on Lit.*, 6 *b*), "It might be a cause of implacable discord and dissension between the husband and wife, and a means of great inconvenience," a very strong statement of the theory of public policy, and which excludes all question of interest. The weight of modern authority, although sometimes recognizing community of interest as an element of disqualification, has placed it on the ground of inconvenience and public policy. The authorities on this point have been sufficiently presented by the present Chief Justice in the case of *Collins v. Mack*, *31 Ark., 684*.

It was there held that the disqualification resting upon public policy was not removed by the constitution of 1874, (*Schedule, sec. 2*), which provides that, "In all civil actions no witness shall be excluded because he is a party to the suit, or interested in the issue to be tried." It is now settled as the *general* rule in this state that, in civil cases, husband and wife can not testify for or against each other. This, also, is expressly provided by statute (*Gantt's Digest*, sec. *2482*). So much of the remarks of the justice who delivered the opinion in *Magness v. Walker*, *26 Ark., 470*, as announces that husband and wife may in any and *all* civil cases, testify in behalf of each other, was not required by the case then in judgment, and can not be accepted as law.

That case, like this, presented the question whether a husband or wife, acting as agent for, and in the absence of the other, might testify regarding the matter of the agency. If this exception to the common law rule of exclusion existed before the constitutional change of the rules of evidence, it exists yet. There was certainly nothing in the constitution of a disabling nature. The wife's testimony

Watkins vs. Turner et al.

as her husband's agent was held admissible in *Magness v. Walker* (*supra*), but as the ground of the opinion had no regard to the agency, and was erroneous, it can not be held as binding this court yet, to any conclusion on the point. It presents itself again for direct decision.

There are numerous cases which hold that where a husband may be a witness for himself, the marital disqualification ceases. That applied to cases where, *ex necessitate*, an exception had been made to the common law rule that one could not testify in his own case. The instances cited in the text-books are cases of proving the contents of lost trunks, account-books, etc. Its application is not allowed under our constitutional provision which makes parties competent witnesses generally. That would be in the teetth of *Collins v. Mack*.

The cases in Vermont, cited to sustain the right of the wife to testify as agent, depend on statute. A careful examination of the cases cited by counsel in this, and the former case of *Magness v. Walker*, fails to satisfy us that either husband or wife became competent to testify for each other upon the sole ground of agency. It would afford too ready means of evading the general policy of the disqualification. The testimony of Thomas Watkins was not admissible.

The result of the cases here, and elsewhere, upon this subject is, that the common law disability to testify for or against each other, as between husband and wife, remains. That in all cases where they act as agents for each other, their acts, declarations and admissions, in the course of the business of the agency, may be proven by others, and will bind the principal, but they can not themselves testify in the case.

We recognize the fact that this, in some degree, militates

against the principle of mutuality, allowing one party to testify, and disqualifying the agent, who may be husband or wife of the other.    The harmony of the rules of evidence has been broken by the restricting nature of the enabling clause of the constitution, removing only the disqualification of *interest*, and allowing that springing from *policy* to remain.   The constitution itself restores the mutuality in cases of suits for or against the estate of persons deceased, but does not proceed further.    We can not do so without judicial legislation.    "*Expressio unius est exclusio alterius*."   If it be desirable, the change is within the power of the legislature.   Meanwhile, husbands and wives who avail themselves of each others' agency, must rest upon the common law modes of proof.    In this case, the matter is of little consequence.    The evidence of the husband does not materially vary the case from that made by the pleadings and other evidence.

Decrees for specific performance were not originally granted in any case as matter of course.   They rested in the sound discretion of the chancellor upon all the equities of the particular case, the manifest right of complainant, the hardship of the case, and the inadequacy of the legal remedy.   Afterwards, when the principles upon which this kind of relief was usually granted became established, it came to be considered the duty of the courts to grant it, upon clear cases coming within the principles, but they have always reserved the right of sound discretion, and generally refuse the specific relief, where the case is not clear, or where the complainant is in the wrong, or there are considerable countervailing equities.   In such cases, it remains competent for courts of equity to refuse to interfere, but to leave the parties to those rights and remedies at law established for the general administration of justice.

The relief is of an extraordinary nature. By this view this case is to be determined.

A careful review of the evidence satisfies the court that the promises made by Turner, in behalf of the wife, in August, 1873, were such as might have prevented Watkins from the exercise of his right to redeem.

Whether he could have done so, and would, but for the promises, is not clearly apparent.

He might, by an effort, have done it; and the effect would have been, upon payment of the Greenwood and Turner judgments according to the provisions of the law, to deprive Turner of the legal right to demand the deed of the sheriff. Turner, after the promises, received the benefit of securing his title without further intervention on the part of Watkins to prevent it; and it will not be presumed, nor is it clearly proven, that Watkins might not have prevented it had he persisted in his efforts. Turner is estopped now from saying that he could not have redeemed; and would have been held to specific performance if Mrs. Watkins had accepted the terms and made reasonable efforts, within a reasonable time, to perform them on her part.

This she did not do; at least the proof does not show it. The inference is, that the terms were not accepted on her part, and that the contract had been abandoned. It is not clear, however, that the time for performance had so far lapsed, on the fourteenth of January following, as to have then precluded her from the exercise of her right. The doubt upon that subject, with the benefit to Turner which accrued from the avoidance of litigation to settle it, might well support the written contract of the fourteenth of January, 1873. That closed past transactions, and must afford the basis of any equities she may now assert. To its terms alone can we look.

By it Watkins recognizes the title of Turner, agrees to pay rent, and accepts, on behalf of his wife and children, the terms upon which they may become the owners. It was not an agreement on the part of Turner to allow Watkins a right of redemption, nor, strictly, to hold the lands as a mere security for the specified debts due from Watkins to himself and others whose interests were in his charge. Turner expressly excludes the obligation to convey on payment of the sums by Watkins, which he would have been obliged to do, on the supposition that the lands were to be held as a security. The provisions are, that on the first day of January, 1874, he will, by special warranty deed, convey the lands to complainant, Mrs. Watkins, "*and such of the children*" of her and said Thomas Watkins, or of either of them, or to a trustee for them, as he and she, by writing, may designate, to their separate and exclusive use and benefit, free from all rights and liabilities of said Thomas Watkins, upon condition:

1. That the rents for that year be paid.

2. *That Mrs. Watkins, or some friend for her*, pay to Turner the estimated amount of $4,635.67, then due him, exclusive of services in a certain case of *Watkins v. Brodie & King*, in the Jefferson circuit court.

Also, the sum of $285, with interest, due Turner & Moore.

Also, what sum may be found due from Thomas Watkins to Emily S. Quarles, or to Quarles and wife, balance of purchase money for part of said lands, unless the same shall be sooner paid, in which case it shall be the same as if paid *by her*.

Also, all taxes for 1872 or any previous year.

Also, shall save Turner harmless from any mortgage or incumbrance existing on said land before the Greenwood judgment lien.

And, finally, all sums which Watkins shall *then* owe Turner.

It was further provided that if any part of the said debt of $4,635.67 shall be paid before the twenty-fifth of December following, the *interest* on such payment, at the rate of $3\frac{1}{2}$ per cent. per month, shall be credited on the rent.

The construction of this contract in connection with the circumstances presents no difficulties. It is an agreement for a conditional sale, and the terms are remarkably clear and explicit. It is a renewal of a former offer, with the time extended for a year. It provides that the whole consideration must emanate from *Mrs. Watkins or her friends*, save the accruing rents for the year, and payments which might be made on the Quarles incumbrance, the latter to be considered as made by her, if any should be made at all. The deed was not to be made to her alone, nor to her and her children. She and her husband were made trustees of a power to designate in writing, such children as were to be, with her, the recipients of the benefits; and provided for an abatement of the rent to be paid by Watkins of three and a half per cent. per month upon any amount paid before the twenty-fifth of December, by Mrs. Watkins upon the debts of her husband. There was no consideration whatever moving from Mrs. Watkins or her children—no obligation on their part to perform the conditions. They were mere volunteers, recipients of a benefit resting upon conditions proposed by the obligor and based upon a consideration moving originally from Thomas Watkins alone, who acted as their agent, and which consisted of his refraining from all efforts to redeem the land whilst he might legally have done so. The consideration was good, and would support the contract; but as it moved solely from him and, they claim, through his agency, it is but

just that they should be bound by all his action with regard to the subject-matter at a subsequent time, which may appear to have been with their assent.

It is further apparent that the design of Turner was to give Mrs. Watkins and her children alone, the benefit of the promise, and that he did not intend Watkins to have it. Payment made by him, or out of his means, would have rendered a conveyance to Mrs. Watkins and her children nugatory. They would have taken on trust for Watkins' creditors. Turner never meant that the benefit of his purchase should thus pass to other creditors. He had no bounty in his intentions towards them, and could not, under his agreement, have been called upon to make a conveyance of lands which Mrs. Watkins and children could not have held.

The proof fails to establish any confidential relations between Watkins and Turner regarding the subject-matter. They dealt at arms-length. All the promises of Turner seem to have been prompted by a feeling of sympathy for Watkins' wife and children.

The whole evidence regarding subsequent events reveals that Mrs. Watkins never made any effort, nor did her friends for her, to perform in good faith the conditions upon which she and her children were to receive title. Her husband, soon after the contract, set to work to defeat the legal right of Turner in the land altogether. Long and expensive litigation ensued, resulting in the decision of this court in the former case, establishing the title of Turner. Pending this, no efforts were made on Mrs. Watkins' part to perform the conditions. She repudiated Turner's title, and awaited the result of her husband's litigation. Nearly four years elapsed from the time of the contract until the filing of her bill. She evidently acted

Watkins vs. Turner et al.

under the advice of her husband; and her friends who perchance, had it in view to aid her, speculated upon the chances of her husband's success, and declined to come forward. Meanwhile, from the first of January, 1874, till the fifteenth of December, 1877, the defendant, Turner, had no claim against the complainant whatever, nor power to coerce her to the fulfillment of the conditions. He had not released his debts against Watkins, and was not in fault in exercising diligence to collect them, after he had reason to believe, as we must think he did, that Mrs. Watkins and her friends had abandoned all efforts to purchase, and her husband had set to work to defeat his title.

It is not necessary to determine whether time was of the essence of the contract or not. It passed and the legal force of the contract was lost. The complainant comes in to be relieved of the consequences of delay, and to have a performance now. She must show equitable circumstances to account for and excuse the delay, or she can not invoke the aid of chancery. She fails to do so— she does not show any genuine effort on the part of herself or friends to perform the conditions. The legal proceedings against Watkins on his debts afford her no excuse. The funds she was to furnish were not to be derived from her husband. She has suffered years to elapse, and has never proffered to do her part until it was decided by the highest tribunal of the state that her husband could not deprive Turner of his title altogether.

Whatever sympathy may be due her and her children, the courts can not dispense with general principles to afford her relief, and her right to specific performance does not fall within the principles which govern that remedy.

We have reviewed this case upon the merits. It is plain, however, that she can in no case maintain this bill

alone and without further proceedings. She and her hus-
band are living. If there were merits in the case, they
should first designate in writing the children to share with
the mother in the conveyance. They would take in com-
mon and as purchasers. Upon refusal, the suit should
have been in their names. If the parents, or either of them,
had been dead, all the children would take equally with
the mother. Chancery would exercise the power on the
principle of equality.

For this reason, as much as upon the merits, we think
the chancellor did not err in dismissing the bill.

Affirmed.