## SIMS *v.* BEST.

### Opinion delivered November 3, 1919.

1. CONTRACTS—WRITING—CONSIDERATION—ORAL PROOF.—Where the consideration clause in a contract is itself a part of the contract, and not merely a receipt, oral evidence to vary or contradict the writing is inadmissible.

2. SPECIFIC PERFORMANCE—CONTRACT OF SALE—WRITING—ORAL TESTIMONY.—Where a contract for the sale of land was in writing definitely specifying the purchase price, and the manner of payment, oral evidence that there was a further consideration provided for by an oral agreement is inadmissible.

3. SPECIFIC PERFORMANCE — DECREED, WHEN — DISCRETION.—Specific performance of a contract to sell land will be decreed where the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party. While the chancellor has a discretion to enforce a contract specifically, under the above facts it is his duty to so enforce it.

4. SPECIFIC PERFORMANCE—LAND UNDER MORTGAGE—MORTGAGEE'S CONSENT.—The owner of land, which was subject to a mortgage held by C. Co. agreed to sell the same to B. C. Co. did not assent to the mortgage, but the managing officer of C. Co. testifying said that the company would assent if the entire purchase price were paid it (C. Co.'s mortgage covering other lands also). *Held* this

amounted to a ratification of the transaction by C. Co., and that in B.'s suit against the owner for specific performance, the latter could not defend on the ground that the land was under mortgage.

5. SPECIFIC PERFORMANCE—SALE OF LANDS UNDER MORTGAGE—APPLICATION OF THE PURCHASE MONEY.—S. owned lands and mortgaged them to C. Co. for a large sum; he then sold a small tract to B. for a certain consideration without the consent of C. Co. B. then brought an action for specific performance, and C. Co. then consented to the sale on the condition that the whole consideration be paid to it, and applied on the mortgage, and, exercising his discretion, the chancellor decreed specific performance upon those terms. But B. had already paid to S. $1,500, but had not seen to it that that sum was applied on the mortgage. *Held,* that B. must pay the entire purchase price into the registry of the court, but that he have an action against S. for the $1,500 paid to him and not applied by S. on the mortgage.

Appeal from Crittenden Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

*A. B. Shafer* and *L. C. Going,* for appellant.

Appellant in 1917 violated his contract deliberately and without cause, and the consideration for the sale was just as appellant contends it was, and appellee breached his contract; if not, appellee was not entitled to specific performance. 26 Cyc. 619; 47 Ark. 519; 1 S.W. 869; 4 Ark. 452; 23 *Id.* 704; 121 *Id.* 302; 18 Am. Rep. 84; 91 S. W. 183; 9 S. W. 500; 59 Atl. 648; 19 S. W. 527; 86 N. Y. 736. Appellee deliberately violated his contract and relieved appellant from all his obligations and the complaint should be dismissed.

*Hughes & Hughes,* for appellee.

1. The evidence does not sustain appellant in his contention. No contract was proved, or if it was it was oral and within the statute of frauds and besides was unilateral, and defendants' evidence was inadmissible. 1 Warvelle on Vendors (2 Ed.), § 114; 102 Ark. 326; 109 *Id.* 82; 124 *Id.* 73; *Ib.* 308; note to 25 L. R. A. (N. S.) 1194-1207; 83 Ark. 163; 14 Wall. 570.

2. On the cross-appeal Best is entitled to recover $6,500 and interest and entitled to specific performance.

### STATEMENT OF FACTS.

Benjamin O. Best brought this suit in equity against Geo. W. Sims and Rena A. Sims, his wife, and the Wm. R. Compton Bond & Mortgage Company, for the specific performance of a contract of sale of 160 acres of land. The contract was between Best and Sims and the Bond & Mortgage Company was made a party to the suit because it had a mortgage on the land at the time the contract was executed. The defendant, Sims, denied that the plaintiff was entitled to a specific performance of the contract.

The Bond & Mortgage Company filed an answer in which it set up that it had a valid mortgage on the land at the time the contract between the parties was executed and that the contract was entered into without its consent.

The facts, as proved by the plaintiff, are substantially as follows:

Geo. W. Sims was a saw mill man and owned a large tract of timber land in Crittenden County, Arkansas. He owned and operated a saw mill there, and B. O. Best was his manager. On the 1st day of November, 1914, B. O. Best and G. W. Sims entered into a contract in writing for the sale of 160 acres of land which is as follows:

"Know all men by these presents, that I, G. W. Sims, of Shelby County, Tennessee, am held and firmly bound unto B. O. Best, of Crittenden County, State of Arkansas, in the penal sum of eight thousand dollars ($8,000); for that whereas the said B. O. Best has this day purchased from me a certain tract of land hereinafter described, and has contracted and agreed to pay the sum of eight thousand dollars ($8,000) by installments, and for this purpose has executed and delivered to me fifty-three promissory notes bearing even date with this bond and each for the sum of one hundred fifty ($150) dollars payable respectively on the 1st day of March, 1915, and each three months thereafter, with interest payable semi-annually.

"The said land so purchased and sold contains one hundred sixty acres (160a) more or less, situated and being in the County of Crittenden and State of Arkansas, viz.: (Here follows description of land.)

"Now, if I, the said G. W. Sims, should make or cause to be made to the said B. O. Best, his heirs or assigns, a good general warranty deed conveying title to said premises, with the usual covenants, upon payment of the several promissory notes aforesaid, with interest, then this obligation to be null and void, otherwise to remain in full force and virtue.

"In testimony whereof, I have hereunto subscribed my name this 1st day of December, 1914."

The contract was signed by the parties, and in pursuance of it Best went into possession of the land. He cleared and put into cultivation about 80 acres of the land and built three tenant houses on it. One house is worth about $350, another about $200 and the other about $100. Best paid the taxes on the land and the installments of purchase money as they matured, aggregating $1,500 and interest. He offered to pay the one that was due September 1, 1917. Sims refused to allow Best to pay this installment or any subsequent one on the ground that Best had quit his employment in violation of their contract. Best then offered to pay all that remained due on the land and tendered the same to Sims and the latter refused to accept the payments. Hence this lawsuit.

According to the testimony of the defendant, Sims, he was indebted to the William R. Compton Bond & Mortgage Company in a large sum and, to secure the same, gave it a mortgage on a large quantity of timber and cut-over lands owned by him, including the land in controversy. His only hope to pay the mortgage indebtedness was in the successful operation of his saw mill. His health became so bad that it required him to leave home for long periods of time, and, desiring that his mill should continue to be operated, he made a verbal contract with Best and his other employees that they were to stay with him and operate the mill for him until he should liquidate

his indebtedness with the Bond & Mortgage Company and in consideration therefor he would increase their monthly salaries and also enter into a written contract with them to sell to each of them 160 acres of land. The written contract above set out was then executed by Sims and Best in pursuance of the verbal agreement just stated. The testimony of Sims in regard to the verbal contract was corroborated by that of his stenographer and another employee. Best denied that any such verbal contract had been entered into and said that the written contract for the sale of the land was all the contract that was made between the parties. Other evidence will be stated or referred to in the opinion.

The court found the issues in favor of the plaintiff, and a decree for specific performance was accordingly entered, and the plaintiff was directed to pay into the registry of the court $8,000, being the entire amount of the purchase price of the land and the clerk was directed to pay this sum to the Wm. R. Compton Bond & Mortgage Company. The plaintiff complied with the directions of the court.

The defendants have appealed and the plaintiff has cross-appealed.

HART, J., (after stating the facts). The main reliance of counsel for the defendant for a reversal of the decree is, that a preponderance of the evidence shows that the real transaction between the parties was that Best should remain in the employment of Sims as manager of his saw mill until Sims paid his indebtedness to the Bond & Mortgage Company and that the written contract for the sale of the land was executed pursuant to that agreement; and that the agreement of Best to remain in the employment of Sims at his saw mill was a part of the consideration for the execution of the written contract for the sale of the lands. Their argument is based on the rule of permitting oral evidence to be introduced to show the true consideration of a deed or other written contract in opposition to that recited; or, where only part of the contract is reduced to writing, to prove

the portion which the parties have allowed to rest in parol.

An illustration of the first kind of case is *Magill Lumber Co.* v. *Lane-White Lumber Co.,* 90 Ark. 426, and an illustration of the second, is *St. Louis & North Arkansas Railroad Co.* v. *Crandell,* 75 Ark. 89. A clear statement (and one much referred to) explaining the rule of permitting oral evidence to be introduced to show the true consideration of a written instrument as well as the limitation of the rule, is given by Judge Robertson in *Gully* v. *Grubbs,* 1 J. J. Marsh. 387. A brief and correct condensed statement of his reasoning is given in the case of *Baum* v. *Lynn* (Miss.), 30 L. R. A. 441. It is as follows:

"Wherever, in a deed, the consideration, or an admission of its receipt, is stated merely as a fact, that part of the deed is viewed as a receipt would be, and the statement is subject to be varied, modified, and explained; but, if the stated consideration is in the nature of a contract—that is, if by it a right is vested, created, or extinguished—the terms of the contract thereby evidenced may not be varied by parol proof, but the writing is its own sole exponent."

In discussing the question in *Gully* v. *Grubbs, supra,* Judge Robertson, in part, said:

"Another principle, and one more universal than the former in its application, is, that wherever a right is vested, or created, or extinguished, by contract or otherwise, and writing is employed for that purpose, parol testimony is inadmissible, to alter or contradict the legal and common sense construction of the instrument. But that any writing, which neither by contract, the operation of law, nor otherwise vests or passes or extinguishes any right, but is only used as evidence of a fact, and not as evidence of a contract or right, may be susceptible of explanation by extrinsic circumstances or facts. Thus a will, a deed or a covenant in writing, so far as they transfer or are intended to be evidence of rights, can not be contradicted or opposed in their legal construction, by

facts '*aliunde*.' But receipts and other writings, which only acknowledge the existence of a simple fact, such as the payment of money for example, may be susceptible of explanation, and liable to contradiction by witnesses.''

(1) In *Armstrong* v. *Union Trust Co.*, 113 Ark. 509, the court held that parol evidence is admissible for the purpose of showing what the real consideration is in a written contract; but it can not be introduced to show that there was no consideration, or to show a consideration that would have the effect to render the writing void. In other words, the rule is that where the consideration clause is itself a part of the contract and not merely a receipt, the general rule as to the inadmissibility of oral evidence to vary or contradict a written contract prevails. *Williams* v. *Chicago, Rock Island & Pacific Ry. Co.*, 109 Ark. 82; *Mott* v. *American Trust Co.*, 124 Ark. 73, and *Harris* v. *Trueblood*, 124 Ark. 308. The rule is illustrated in *Barnett* v. *Hughey*, 54 Ark. 195, which was an action upon a covenant of warranty in a deed. The court held that in such an action parol evidence is admissible to show that the actual consideration was greater or less than that expressed in the deed; but not to defeat the deed or a recovery on the covenants.

(2) In the application of the rule to the case at bar we do not think the oral testimony offered was admissible. The bond for title is a written contract complete in itself and the purchase price of the land is fixed in it at $8,000, evidenced by fifty-three promissory notes of even date with the bond for the sum of $150 each. The bond, in effect, provides that Sims should make a warranty deed to Best upon the payment of these promissory notes with interest. In other words, Sims covenanted with Best to make him a warranty deed upon the payment of the notes recited in the bond for title together with the accrued interest. To allow the oral testimony offered by Sims on the pretense that it had a bearing upon the consideration named in the bond for title would defeat its covenants.

Neither can it be said that the agreement offered in proof is collateral to the bond for title and for that rea-

son admissible under the doctrine that where the contract is oral and only a part of it is reduced to writing it is permissible to prove that part which the parties have allowed to rest in parol. The alleged parol agreement was made at the same time the bond for title was executed and was made between the same parties. The parties failed to incorporate it in their written agreement, or to make any reference whatever to it. The offered evidence had no purpose except to change the terms of the bond for title, and as such it was not admissible. The parties have reduced their contract to writing and the instrument is free from ambiguity or uncertainty. It would be dangerous to purchasers of land if parol evidence should be permitted to vary or contradict a writing complete in itself.

(3) Finally, it is insisted that the right to specific performance is not absolute, but is a matter of discretion with the chancellor. While this is true, the discretion is a sound judicial discretion, controlled by established principles of equity, and where the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach. Pomeroy's Eq. Jur. (3 Ed.), vol. 4, sec. 1404. Tested by these principles, we think the chancellor was right in decreeing the specific performance of the contract which is the basis of this lawsuit.

(4) Again, it is insisted that the court should not have granted the relief because the Bond & Mortgage Company had a valid mortgage on all the lands of the defendant, Sims, including the lands in controversy, and that a large sum of money was due and unpaid upon this mortgage. It was shown that the Bond & Mortgage Company did not give its assent to the execution of the contract sued on; but the managing officer of the corporation testified in the case and said that if Sims and Best would

join in asking the company to receive the whole $8,000 for which this land was sold, the company would consent to it. The court decreed a specific performance of the contract upon condition that Best should pay in the entire $8,000 of the purchase money into the registry of the court to be paid to the Bond & Mortgage Company, notwithstanding Best had already paid $1,500 of the purchase money to Sims. This was done by Best. Under the circumstances we think this amounted to a ratification of the transaction on the part of the Bond & Mortgage Company and that the company is no longer in an attitude to object to the contract being carried out. Certainly this action results in no prejudice to Sims and he cannot complain.

(5)  On the cross-appeal but little need be said. Best was not entitled as against the Bond & Mortgage Company to recover the $1,500 which he had previously paid to Sims. He knew that the Bond & Mortgage Company had a mortgage on the lands and yet paid Sims $1,500 without seeing to its application toward the payment of the mortgage indebtedness. As we have already seen the granting of the relief of specific performance was a matter resting in the sound judicial discretion of the chancellor, and he properly imposed the condition that Best should pay the whole amount of the purchase money into court for the benefit of the Bond & Mortgage Company in order that its rights might not be prejudiced. As against Sims, Best was entitled to judgment for the $1,500 and accrued interest, and to this extent the decree is reversed and judgment entered here in favor of Best against Sims. In all other respects the decree will be affirmed.