COLE *v.* SALYERS.

4-3632

Opinion delivered December 10, 1934.

D. H. *Howell* and *Warner & Warner,* for appellant.
*Starbird & Starbird, Roy Gean* and *Hill, Fitzhugh & Brizzolara,* for appellees.

BAKER, J.   H. A. Reed was the owner of a certain piece of real property in the town of Alma, Crawford County, Arkansas. It is unnecessary to describe it here. Several years ago he moved from this property to Bristow, Oklahoma. After leaving this property he rented it to one of the appellees, A. M. Salyers, who has lived there as a tenant continuously since that time. Salyers made improvements upon the property, in addition to

paying the rent, and, perhaps, with the expectation of the final purchase of it. Among other things he put in a water system. Reeves Bolling, assistant cashier of the Commercial Bank of Alma, for a time, had been trying to sell the property for the owner, Reed. He had not been able to find a purchaser at the price for which he was authorized to procure a sale, but had on several occasions talked with Salyers, and there is some evidence tending to show that Reed preferred Salyers, his tenant, as a purchaser, on account of the fact he had lived there a long time, paid his rents, and kept up the property. Reeves Bolling had been pricing the property at $1,100. About the middle of October, 1933, he had an offer of $850, and he was advised the prospective purchaser would pay him $900 in order to buy it. Bolling wrote Reed and advised him he believed he could sell the property for $900. Prior to that time, on several occasions, Bolling had advised Salyers to buy. Salyers, however, had indicated his desire for the property, but always advised that he was unable to get the money with which to make the purchase. About the 19th of October, Bolling received a letter from Reed, in response to the one Bolling had written advising him of the offer, in which Reed said: "So if you can get nine hundred dollars for our part, let it go." The letter was also to the effect that Reed was willing to accept that because he had a prospective real estate deal on hand near where he lived, and the implication is to the effect that he would need proceeds from his Arkansas property.

On the 19th of October, the father of the plaintiff in this cause, the appellant here, approached Bolling to purchase this property for his son, Ray Cole, and learned that it could be bought for $900, but no effort was made on the 19th of October to close the deal. However, Mr. Cole asked that he be given until noon the next day, the 20th, to decide whether or not he would purchase. Before noon the next day, under directions of his father, Ray Cole, appellant, procured contract to be prepared by his attorney for the sale of this property, at the price of $900, $25 of which was to be paid in cash and $875 upon delivery of the deed, and about 10 o'clock that day

presented the contract to Reeves Bolling, who signed the contract "H. A. Reed by Reeves Bolling, vendor." It was also signed by Ray Cole as vendee. The $25 was paid to Reeves Bolling. There is some conflict in the evidence about whether or not Salyers knew of this trade. We indulge the presumption, though he disputes that fact, that he knew the property had been contracted by Bolling to Cole. Shortly after noon that day, Salyers procured from J. C. Bolling check for $500 and drove directly to Bristow, Oklahoma, where, according to all of the facts in evidence, he purchased the property directly from Reed and delivered the J. C. Bolling check as a down payment on the property.

Cole learned that afternoon or night of the fact that Salyers had gone to Oklahoma, and early the next morning had Reeves Bolling telephone Reed to the effect that he had executed contract for the sale of the property, and advised him that Cole was going to insist upon the performance of the contract. J. C. Bolling also called Salyers that forenoon and advised him that there would be confusion or trouble and not to use the check. In response to both telephone calls, however, Reed and Salyers asserted that the sale had been made the night before, and Reed insisted that he had no knowledge at the time of his contract with Salyers that Cole had contracted for the property.

Reed returned to Arkansas with Salyers, and a day or two later executed to Salyers a deed conveying the property and took mortgage from Salyers for the $400 balance owing to him, and Salyers, at or about the same time, executed a second mortgage to J. C. Bolling to secure the payment of the $500 borrowed by Salyers. During all of this time Cole was insisting upon the execution of deed to him under his contract made with Reeves Bolling.

The foregoing statement contains substantially all of the facts necessary to our decision, except such as may be stated in the discussion.

Plaintiff, appellant here, in his complaint, alleged that Reed, being desirous of selling the property, placed the same upon the market and employed Reeves Bolling

of Alma, Arkansas, to procure a purchaser at the price of $900, the price Reed had agreed to take in the letter, under date of the 18th of October.

The matter partly, but not altogether, decisive of this case is the power or authority of Reeves Bolling. Appellant argues in his brief that the letter was full authority for the execution of the contract, executed as between Bolling, as the agent of Reed, and Ray Cole; that this letter was full authority under the facts and circumstances to justify the execution of the contract under which the appellant claims the property and seeks specific performance. This is contrary, however, to the theory upon which the complaint is filed, that is, that Bolling had authority merely to find a purchaser.

Criticism, somewhat caustic in its nature, is made concerning the conduct of Reeves Bolling, in that he did not first submit this last offer to Salyers and thereby give him preference in the purchase of the property against some other party at the same price. He probably should have done that, but we see nothing in this record to justify criticism of Bolling in the fact that he did not first submit the matter to Salyers, for the reason that Salyers had on frequent occasions asserted that he was unable to get the money with which to purchase. Loyalty to Reed, who desired to sell, justified Bolling in attempting to close the deal with one who was ready, willing and able to pay the price. His idea as to whom the property should be sold and how the commission should be paid was wrong, but the point is he was attempting to sell Reed's property for Reed, pursuant to the purpose for which he was employed. He most probably misconceived his power or authority.

Salyers had arranged some days before to get money from J. C. Bolling, but he did not disclose that fact to Reeves Bolling. It may be, if Reed had known that he could have procured all cash at the time he contracted with Salyers, he would have preferred to accept Cole as the purchaser, though the reasons are equally cogent that, on account of the fact that Salyers had been a good tenant, paid his rents, kept up and made improvements upon the property, he might have preferred Salyers as his purchaser. At any rate he sold to Salyers.

The letter written by Reed to Bolling, advising him that if he, Bolling, could get $900 "to let it go," does not meet the requirements of law, as announced by this court, that specific performance will be granted only under certain conditions. "Courts of equity have always reserved the right of exercising a sound discretion in suits for specific performance and generally refuse relief where the case is not clear, or where the complainant is in the wrong, or there are considerable countervailing equities. In such cases equity refuses to interfere, and leaves the parties to their rights and remedies at law." *Watkins* v. *Turner*, 34 Ark. 663; *Smith* v. *Price,* 125 Ark. 589, 189 S. W. 167; *Dollar* v. *Knight,* 145 Ark. 522, 224 S. W. 983.

This court said in the case of *Walk* v. *Barrett,* 177 Ark. 265, 267, 6 S. W. (2d) 310, in the matter of a parol contract: "The rule of law applicable in such cases is that, before a court of equity may grant specific performance of a parol contract to convey lands, the evidence of such agreement must be clear, satisfactory and convincing. It must be so strong as to be substantially beyond reasonable doubt. *Williams* v. *Williams,* 128 Ark. 1, 193 S. W. 82; *Fine* v. *Laster,* 110 Ark. 425, 161 S. W. 1147; Ann. Cas. 1915C 385; *Boyd* v. *Lloyd,* 86 Ark. 169, 110 S. W. 596; *Whittaker* v. *Trammell,* 86 Ark. 251, 110 S. W. 1041; *Salyers* v. *Smith,* 67 Ark. 526, 55 S. W. 936."

Appellant relies upon Reed's letter of October 18, 1933, as the authority for the execution by Bolling of the contract of sale and that Bolling had the power to execute this contract in the name of Reed. No doubt he thought he had. It is apparent that Bolling's power and authority may have been limited by instructions partly in parol.

There is one other trouble, however, that confronts the appellant. There is no contention that Reeves Bolling, the agent, had the exclusive right or power to sell the property. Reed could have sold it at any time and without consulting or conferring with Bolling. He did this. But appellant, by his complaint, admits that Bolling had the right only to procure a customer, and this necessarily implies that Reed did not have to accept a customer

found, though he might make himself liable, by the rejection of one ready, willing and able to pay for the property, for whatever commission, if any, that might accrue. *Gammell* v. *Cox*, 143 Ark. 72, 219 S. W. 75; *Surbaugh* v. *Dawson*, 185 Ark. 406, 47 S. W. (2d) 591; *Blumenthal* v. *Bridges*, 91 Ark. 212, 120 S. W. 974.

Notwithstanding the fact these citations are to cases wherein agents or brokers were suing for commissions, yet they are to the effect that the owner of property, listing it with a broker for sale, still may make sale himself unless he grants the exclusive right to the broker.

Other rights intervene in this sale. J. C. Bolling had given his check for $500, and it is a fair inference, if not in direct proof, that he was to receive as security for his check a mortgage upon this property. This check had been delivered to Reed before Reed was apprised of Bolling's contract with Cole. It is argued that J. C. Bolling could have protected himself by stopping payment of the check. He did all that good faith and good conscience required him to do, and it was not incumbent upon him to take a chance of having the amount of the check recovered from him. It had been transferred to an innocent holder. As between Reed and Bolling, Reed was an innocent holder. Salyers was also entitled to some consideration by reason of his waterworks system and other improvements made upon the land.

The appellant asked in the alternative, in the event he should not be able to procure specific performance, that he have damages. The proof indicates that, under the prevailing conditions, the value of the property was not substantially in excess of $900. That being true, there could be no damages, even if there were a breach of contract.

The decision of the chancellor is supported by the evidence, and the decree is affirmed.