PEPIN *v.* HOOVER.

4-6949                                        168 S. W. 2d 390

Opinion delivered February 8, 1943.

*A. J. Demers* and *June P. Wooten*, for appellant.

*Fred A. Isgrig, Carl E. Langston* and *Elmer Schoggens*, for appellee.

GRIFFIN SMITH, C. J.   Refusal to quash an execution is the error alleged.

*    *    *

In 1930 Hoover procured judgment against Pepin for $1,800 and assigned it to Sam Cochran. Levy on seven pieces of realty was made the same year. At the sale in October Cochran's bid of $7 was accepted. There the transaction seems to have rested until 1935, when The Midland Savings & Loan Company sued on notes issued to it by Pepin, amounts being more than $13,000. The obligations were secured by mortgages on two of the tracts of land levied on by Cochran. These notes and mortgages, however, were executed in 1929.

A second mortgage to secure $10,000 due J. K. Riffle covered the property forming Midland's security. It was subsequent to Pepin's mortgage to Midland, but prior to the original lien of Hoover's judgment.

In 1935 Midland instituted proceedings for judgments and foreclosures. The decree of October 9 directed sale of the two tracts. Cochran, and trustees for Riffle, were made defendants.

December 17, 1935, Pepin and his wife deeded the property to Midland. Reason given is that Act 49, § 2, approved February 18, 1935, prevented confirmation until a succeeding term of court. Pepin had no realizable equity. His testimony is that Midland's attorney suggested deeds be given. Consideration recited in the Pepin deeds was one dollar and release of the debt. Concurrently Midland executed two releases, showing discharge of Pepin's debt for which the property was mortgaged, payment having been made. The Riffle mortgage was released as to the property in which Midland was interested. By indorsement on the record Cochran used the expression, "partial release of judgment lien." There was the recital by Cochran that the transaction was intended ". . . as a full and com-

plete release and discharge of any lien [upon the two tracts of land], but is not a release of any lien upon any other property belonging to Henry S. Pepin."[1]

In April, 1942, execution was issued under the judgment procured by Hoover. The assignee had died. Harry F. Cochran was administrator. Two attorneys who represented Hoover when he sued Pepin claimed liens and joined in an answer to Pepin's motion to quash the execution, Pepin's contention being that the judgment was more than ten years old; that *scire facias* to revive had not issued, and that the defense of limitation should be sustained. Pope's Digest, §§ 8937, 8271, 5271. Cochran and his co-plaintiffs insisted the indorsements implied payment, and they had a right, it was argued, to rely upon the record. By the transactions, they say, Pepin acquired advantages: there was no deficiency judgment, costs were avoided, and in other respects the arrangement inured to the mortgagor's enhanced financial status. It is also urged that oral testimony explanatory of the partial release was incompetent. The court thought Pepin was bound by the implications arising from his recorded transactions and refused to quash.

*Koontz* v. *LaDow,* 133 Ark. 523, 202 S. W. 686, declares the law to be that the date of payment on a judgment is the time from which a new period of life for ten years begins to run. But the question here is, Not what is the effect of payment, but *was there a payment,* and if not, was oral testimony admissible to show that no payment was made?

In Wigmore on Evidence, Third Edition, v. 9, § 2433, it is said that a recital of consideration received is, like other terms, disputable so far as concerns the thing actually received, but so far as the terms of a contractual act are concerned the writing must control whether it uses the term "consideration," or not. This rule was cited in *Williams* v. *Chicago, Rock Island & Pacific Railway Company,* 109 Ark. 82, 158 S. W. 967. Likewise, in *Moncrief* v. *Miller,* 178 Ark. 1069, 14 S. W. 2d 227, there was the holding that in deeds grantors may show what

---

[1] The release contained reference to the judgment assigned by Hoover to Cochran.

the consideration was and its value, ". . . but [such grantor] cannot show that there was no consideration, or that the consideration failed, for the purpose of defeating the conveyance."[2]

In the case at bar there is no attack on the deeds or the releases. The issue is, What was the effect of the recitals when viewed by parties who looked only to the record? Were such parties deceived into believing that Pepin had made payments, and that proceedings to keep the judgment alive were unnecessary? If Pepin or Cochran beguiled appellees into inaction, appellant would not be permitted to say he did not intend the result.

The assigned judgment was more than three years old when Pepin and Cochran caused the records to be made. There had been no revivor and the lien had been lost. Pope's Digest, § 8256. As expressed in appellant's brief, "legally, the partial release amounted to nothing."

Midland's litigation and matters incidental to execution of deeds and releases, were handled by an attorney who moved to Washington, D. C. This attorney procured the services of another Little Rock lawyer to close the case. Deeds were prepared without expense to Pepin or Cochran. Clear inference from testimony given by Midland's lawyer is that Cochran knew what the transactions were and willingly acquiesced to accommodate. The administrator stands in no better position than did Sam Cochran. Attorneys for Hoover are similarly situated.

Since impeachment of the deeds and release as such is not intended, we think parol testimony was admis-

[2] Mr. Justice HART, in *Sims* v. *Best*, 140 Ark. 384, 215 S. W. 519, said that a clear statement explaining the rule permitting oral evidence to be introduced to show the true consideration of a written instrument, as well as the limitation of the rule, is given by Judge Robertson in *Gully* v. *Grubbs*, 1 J. J. Marsh. 387, and that a brief and correct condensed statement of his reasoning was given in *Baum* v. *Lynn*, 72 Miss. 932, 18 So. 428, 30 L. R. A. 441, the statement being: "Wherever in a deed, the consideration, or an admission of its receipt, is stated merely as a fact, that part of the deed is viewed as a receipt would be, and the statement is subject to be varied, modified, and explained; but, if the stated consideration is in the nature of a contract—that is, if by it a right is vested, created, or extinguished—the terms of the contract thereby evidenced may not be varied by parol proof, but the writing is its own exponent."

sible to show circumstances relating to their execution insofar as recitals are relied upon to show that value, as encompassed within the words "credit," or "partial payment," or "release," was a formality rather than a fact. It follows that the court erred in declining to quash the execution. Reversed, and remanded with directions to quash.