5-2841             364 S. W. 2d 317

Opinion delivered December 3, 1962.

[Rehearing granted Feb. 18, 1963—See 236 Ark. 129.]

*Rolland A. Bradley,* for appellant.

*Robert W. Henry,* for appellee.

ED. F. McFADDIN, Associate Justice. Appellees, W. A. Diehl and wife, filed suit against Appellants, J. E. Loveless and wife, for specific performance of an option contract, and in the alternative prayed for damages. Appellants, Loveless and wife, denied the claim for specific performance; and, by counterclaim, sought judgment on a note. Trial in the Chancery Court resulted in a decree awarding Diehl and wife specific performance and damages; and also awarding Loveless judgment on the note. Both sides have appealed.

Mr. and Mrs. Loveless owned a farm of 79 acres in Faulkner County; and they leased the farm to Mr. and Mrs. Diehl for a 3-year term beginning December 15, 1956, at a rental of $100.00 per month, payable in advance. The lease instrument also contained this option:

"It is mutually agreed and understood between the parties hereto that Lessees shall have an option to purchase said property at any time during the life of this lease, it being specifically understood that at any time between December 15, 1956, and December 15, 1959, that said option can be exercised by the Lessees wherein

they will be permitted to purchase said lands for a total purchase price of $21,000.00."

The Diehls took possession of the land and spent several thousand dollars in improvements. Also, Mr. Diehl purchased from Mr. Loveless a "pipeline milking system complete with two walk through stalls," and executed therefor his promissory note for $1,440.95; and no part of this note has been paid. The Diehls evidently intended to seasonably exercise the option to purchase the land; but as time went on they found it impossible to do so. In order to salvage what they could from the expenditures they had made for improvements, the Diehls listed the property with real estate brokers, hoping to find a purchaser who would pay in excess of the $21,000.00, the amount required to be paid to exercise the option with Loveless.

Shortly before the option expired, the Diehls agreed with Dr. J. W. Hart to sell him the place for $22,000.00; which, after paying the Loveless option of $21,000.00, would have left the Diehls $1,000.00. It is clear that Dr. Hart could have paid the $22,000.00 for the property. The evidence is in conflict as to the conversations and dealings between the Diehls and Dr. Hart on the one side, and the Lovelesses on the other; but it is reasonably clear that before December 15, 1959, Dr. Hart would have paid the $22,000.00 if Mr. Loveless had not interfered with the Diehl-Hart trade, by disclaiming any intention to sell the property to Diehl. Such interference and disavowal by Loveless made unnecessary any further tender of the $21,000.00 to him. (*Read's Drug Store* v. *Hessig-Ellis Drug Co.*, 93 Ark. 497, 125 S.W. 434.)

After December 15, 1959 the Diehls moved a portion of their property from the premises; and the Lovelesses took forcible possession, and rented the property to Mr. Waggoner for $100.00 per month; and there are claims and counterclaims because of such forcible possession, and also claims for rent, and damages. No useful purpose would be served by detailing the testimony of the various witnesses and differentiating our

conclusions from those of the learned Chancellor. After a careful study of all the evidence, we have decided that the best way to conclude this litigation is as follows:

1. The Diehls are entitled to judgment against the Lovelesses for $1,000.00, being the amount the Diehls would have realized if they had purchased the property from the Lovelesses for $21,000.00 and sold it to Dr. Hart for $22,000.00. Under the situation as it existed in December 1959, the judgment of $1,000.00 gives the Diehls all the relief that a deed from the Lovelesses would have given them. The Diehls admitted that they could not have purchased the property except by obtaining the money through resale to Dr. Hart. He was ready, able, and willing to purchase in December 1959, but was not bound to do so thereafter. Furthermore, the Diehls prayed for damages in the alternative to specific performance, and we conclude that the amount of $1,000.00 is the amount of damages they established in connection with the option to purchase; and this conclusion eliminates any rental claims of the Diehls after December 15, 1959. In thus awarding the clearly established damages in lieu of specific performance, we are exercising the sound discretion which a court of equity has in cases involving specific performance. Such discretion has been recognized in: *Orr v. Orr,* 206 Ark. 844, 177 S.W. 2d 915; *Cole v. Salyers,* 190 Ark. 53, 76 S.W. 2d 669; and *Simms v. Best,* 140 Ark. 384, 215 S.W. 519. See also *Jamison Coal Co. v. Goltra* (8th Cir.), 143 F. 2d 889; 154 A.L.R. 1191; and see also 49 Am. Jur. p. 13 *et seq.,* "Specific Performance" § 8 and § 9.

2. Mr. Loveless is entitled to judgment against Mr. Diehl on the milking equipment note for $1,440.95, with interest at six per cent per annum from January 15, 1957 until paid. The $1,000.00 damages as awarded the Diehls in the paragraph just above is to be credited on the Loveless judgment as of December 15, 1959; and Mr. Loveless will have judgment against Mr. Diehl for the balance. The appellees' claim to strike this note item was correctly denied by the Chancery Court.

3. The claim of the Lovelesses for balance of rents, and the claims of the Diehls for loss of property were considered by the learned Chancellor as offsetting. At least, each claim was so disputed by evidence as to be unproved; and in this we agree.

It follows that the Chancery decree is reversed and the cause remanded, with directions to enter a decree in keeping with this opinion; and each party will bear the cost of the entire case that such party has incurred.

JOHNSON, J., not participating.